MERCHANDISE REPORTING Co., INC., Plaintiff, *v.* L. ORANSKY & SONS and Others, Defendants.

City Court of New York, New York County, ——— ——— —, 1929.

*Harry Lyon* (appearing specially), for the motion.

*Harry Uttal*, opposed.

KELLER, J. The facts as found by the referee are substantially as follows: David Oransky, an officer of the defendant corporation, the owner of a department store in Des Moines, Iowa, was served with a summons in an action in this court while in the city of New York. The action is for breach of a written contract of employment, pursuant to which plaintiff acted as defendant's representative in the city of New York. The defendant appeared specially and moved to vacate the service of the summons on the ground that the court has no jurisdiction, its contention being that it has not filed a certificate permitting it to do business within the State and that it is not doing business within the State so as to manifest its presence here and make it amenable to the process of the State. David Oransky, the secretary of defendant corporation, came to New York once, twice or three times a year on the business of the corporation, according to seasonal requirements of defendant's business. There are about ten other buyers of the corporation who came to New York

on defendant's business from one to six times a year, according to seasonal requirements. The defendant at the time it was served with the summons had a written contract with Felix Lilienthal & Co., Inc., of the city of New York, to act as its resident New York buyer and to furnish reasonable office facilities to the defendant at its offices in New York city, for which the defendant was to pay $3,000 a year in equal monthly installments for the year 1928. The testimony shows that the duties of the resident buyer were to supply it with market information on styles and sources of supply, to place orders for defendant when so instructed, and among other things to give it market information when its buyers are in the market. The office facilities that it furnished the defendant were the use of one of a large number of rooms into which its space was divided. It had about 150 firms for which it acted as resident buyer, to each of which one of the rooms was assigned when buyers or representatives came to the New York market. When the defendant came to New York it notified the resident buyer in advance, and one of the rooms was assigned to the defendant which was used by its buyers when in New York for the transaction of such business as a buyer would transact, which included the receipt of mail, the examination of samples and the interviewing of such persons as sought to sell them merchandise. The defendant's name was printed on a card which was placed in a slot on a board in the main office indicating the room that it occupied. There were five such slots in which names of firms for which Felix Lilienthal & Co., Inc., acted as resident buyer were placed when their buyers or executives were in the market. These names were removed when the buyer or executive left the market. The names on the board were placed there to keep salesmen informed of who was in the New York market. The above is a *résumé* of the facts found by the learned referee in so far as they are necessary to this decision, and on these facts he has found as a matter of law that the defendant was not doing business in the State of New York with such " a fair measure of permanence and continuity " as to bring it within the purview of sections 15 and 16 of the General Corporation Law (added by Laws of 1927, chap. 425).* The learned referee cites as authorities in support of his opinion *Meyer* v. *Sachs Manufacturing Co.* (200 App. Div. 458); *Brandow* v. *Murray & Tregurtha Corp.* (203 id. 47); *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259); *Rosenberg Bros. & Co.* v. *Curtis Brown Co.* (260 U. S. 516); *Scheinman* v. *Bonwit, Teller & Co.* (132 Misc. 311) and *Green* v. *The B. & M.* (203 N. Y. Supp. 464). It is well settled that a foreign corporation may be sued, even though

---

* See, also, Laws of 1929, chap. 650, revising General Corporation Law generally.— [REP.

it has failed to file the certificate required by the General Corporation Law. (*Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259; editorial N. Y. Law Journal, November 14, 1928.) As said by CARDOZO, J., in *Tauza* v. *Susquehanna Coal Co.* (*supra*), activities insufficient to make the transaction of business within the meaning of these statutes (Gen. Corp. Law, §§ 15, 16) may yet be sufficient to bring the corporation within the State so as to make it amenable to process. This is so whether its business be interstate or merely local if in fact it is here " not occasionally or casually, but with a fair measure of permanence and continuity." Inasmuch as the question involves the due process clause of the Federal Constitution the Federal authorities are controlling on the point. (*Day & Co.* v. *Schiff, Lang & Co.*, 278 Fed. 533, 535.) This was recognized in *Tauza* v. *Susquehanna Coal Co.* (*supra*), in which the Court of Appeals followed the rule laid down in *International Harvester Co.* v. *Kentucky* (234 U. S. 579). The test of " corporate presence " and the test of doing business " with a fair measure of permanence and continuity," as laid down in the *International Harvester* and *Tauza* cases, were applied in many decisions in this State to cases where buyers came into the State to purchase goods regularly, but maintained no office within the State. Among the cases of this kind in which it was held that the State court acquired jurisdiction is *National Furniture Co.* v. *Spiegelman & Co.* (198 App. Div. 672). In the *National Furniture Co.* case the court said: " Particularly is jurisdiction given when the contract sued on is one made in this state." That case was decided before *Rosenberg Bros. & Co.* v. *Curtis Brown Co.* (260 U. S. 516), in which BRANDEIS, J., in a case involving regular visits of one of the officers of a foreign corporation to New York to purchase goods, said that " visits on such business, even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of the state * * * and as it was not found there, the fact that the alleged cause of action arose in New York is immaterial." Since the decision in *Rosenberg Bros. & Co.* v. *Curtis Brown Co.* (*supra*) the mere coming into the State of buyers or executives of foreign corporations to purchase goods, even if occurring at regular intervals, has been held not to give the court jurisdiction. (*Hamlin* v. *Barrett & Co.*, 246 N. Y. 554; *Green* v. *The B. & M.*, 203 N. Y. Supp. 464; *Scheinman* v. *Bonwit, Teller & Co.*, 132 Misc. 311.) These are the cases cited by the official referee which are clearly distinguishable from the case at bar. The other cases cited by the official referee are *Tauza* v. *Susquehanna Coal Co.* and *Meyer* v. *Sachs Manufacturing Co.* (*supra*). The *Tauza* case supports the plaintiff's contention that defendant was doing business so as to make it amenable to

process; the *Sachs* case involved the occasional visit of the officer of a foreign corporation to this State, at which time goods were purchased. It has always been the law that such visits did not constitute doing business in such a sense as to hold such foreign corporations amenable to process in this State. While it may be that the decision in *National Furniture Co.* v. *Spiegelman & Co. (supra)* would not now be controlling in view of the ruling in the *Rosenberg* case, that decision does not affect the rule laid down by the Appellate Division in *Fleischmann Construction Co.* v. *Blauner's* (190 App. Div. 95), which this court is bound to and does follow. In that case the facts were almost identical with the facts in the instant case and involved activities within the State that were continuous in their nature to a greater extent than were the activities of defendant's agents in the *International Harvester* case. The defendant was a foreign corporation conducting a retail department store in Philadelphia, with fifteen buyers making regular trips to New York to purchase goods under the supervision of Harry Blauner, an officer of the corporation. The corporation had a resident buyer in New York who likewise was a resident buyer for seventeen other out-of-town houses. The duties of the resident buyers are identical in both cases. If anything, the facts are stronger in the instant case. We can say with greater certainty that the defendant is here " with a fair measure of permanence and continuity," because its resident buyer is operating under a written contract by the terms of which it is obliged to furnish office space to the defendant's buyers and executives and for which office facilities, together with services, defendant pays the sum of $3,000 a year. This is a continuing contract requiring continuous performance within the State. The resident buyer regularly purchases goods for the defendant when its buyers are not in the market. As said by DOWLING, J., in *Fleischmann Construction Co.* v. *Blauner's* (*supra*): " Its purchases in New York city are not isolated or casual, but are customary, regular and systematic * * * the continued and organized buying of goods in New York city by defendant is as much a part of its business operations as the sale of these goods to the public. If the defendant was engaged in selling its goods in New York city by the same agents and in the same manner, it is evident that under the authorities it would be doing business in New York city and the service would be good. It must follow that a regular and long-continued practice of buying instead of selling is equally doing business." On the authority of the *Fleischmann* case I hold that the service of the summons on defendant was properly made.