W. HOLT APGAR, receiver of the Independent Glass Company, a corporation,

*v.*

ALTOONA GLASS COMPANY, a corporation, et al.

[Submitted January 19th, 1921. Decided February 19th, 1921.]

1. Service of a subpœna directed to a foreign corporation, and served upon an officer of that corporation who is temporarily attending a convention in this state, will be quashed, it appearing that the defendant corporation was not authorized and in fact never did any business in this state.

2. The jurisdiction of the court over the persons of the defendants is properly raised by a motion to quash the writ of subpœna.

3. A rehearing will not be granted because of an error of judgment or a mistake of law by counsel as to the pertinency or force of certain evidence.

4. *Doctor* v. *Desmond, 80 N. J. Eq. 77,* and *Moulin* v. *Insurance Co., 24 N. J. Law 222,* and *National Condensed Milk Co.·* v. *Brandenberg, 40 N. J. Law 111,* distinguished.

On bill, &c.   On motion for a rehearing.

*Messrs. Burnett, Sorg, Murray & Duncan,* for the motion.

*Messrs. Homan & Buchanan,* for the respondents.

BACKES, V. C.

The receiver of the defunct Independent Glass Company (Window Glass Trust) filed this bill against thirty-two foreign corporations, setting up that they were stockholders of the company, and praying that an assessment be levied against them "for the par value of the amount of stock for which they subscribed," and that they be decreed to pay the assessment to the receiver, so that he may satisfy the company's debts, and the cost of the administration. Process issued and was returned *non est*, and thereupon an order for substituted service upon the defendants was entered and published and posted as therein provided. Later, a second subpoena issued against them and was returned by the sheriff of Atlantic county served upon three, the Dunkirk Window Glass Company, Camp Glass Company and Smethport Glass Company, service being made upon the president of the first two and upon the vice-president of the third. They entered special appearances, and, upon the return of an order to show cause, the service was quashed, it appearing, by the proofs, that the defendants were not authorized and never had in fact transacted any business in this state, which was not controverted, and that the officers upon whom process was served were, at the time, temporarily in this state upon business of their own. Service under such circumstances was obviously abortive. *Camden Rolling Mill Co.* v. *Swede Iron Co., 32 N. J. Law 15;* *Puster* v. *Parker Mercantile Co., 70 N. J. Eq. 771.*

An appeal was taken, which was withdrawn to make this motion for rehearing. The receiver has taken on new counsel, whose plea is, in effect, that if given another chance he could make a better showing of facts, and a more persuasive argument upon the facts and the law than his predecessor had made. There are no newly-discovered facts, and for that reason the motion must go down.

A motion for a reargument, on the case as made, comes too late after the entry of the order or decree. *Kirschbaum* v. *Kirschbaum, 111 Atl. Rep. 697; 92 N. J. Eq. 7.*

A rehearing will not be granted because of an error of judgment or mistake of law by counsel as to the pertinency or force of certain evidence. *Warner* v. *Warner, 31 N. J. Eq.*

*549; McDowell* v. *Perrine, 36 N. J. Eq. 632; Patterson* v. *Read, 43 N. J. Eq. 18* (cited with approval in *White* v. *Smith, 72 N. J. Eq. 701*); *Cumberland, &c., Co.* v. *Clinton, &c., Co., 84 N. J. Eq. 557* (at *p. 566*).

To satisfy counsel and his client that the service was properly quashed, even in the light of what he now offers, I will state the reasons.

Jurisdiction of the court over the persons of the defendants was properly raised by motion to quash the writ. *Brimberg* v. *Hartenfeld Bag Co., 89 N. J. Eq. 425.*

The officers of the defendant corporations were, at the time process was served, attending a convention of the National Association of Window Glass Manufacturers at the Traymore, Atlantic City, of which they, individually, were members. So it appeared by the proofs. Present counsel says that if given the opportunity he believes he can show that the corporations were members of the association; that the officers were their representatives, and that their mission into this state was upon business of their companies—the convention—the object of which, admittedly, was to confer and act upon matters involving, solely, the policy of the *confreres* in their common calling. He further says that this would have been shown upon the original hearing had the affiants been put to a cross-examination upon their depositions, and for the first time calls my attention to a request to that effect in the affidavit of the receiver. Counsel at that time neither presented nor pressed the application.

I fail to see how these developments would change the result. Section 88 of the Corporation act provides that service of process in personal actions against foreign corporations may be made "upon any officer, director, agent or engineer of such corporation" personally or at his dwelling-house. *Comp. Stat. p. 1653.* But, that such service have legal vitality and constitutional sanction, the corporation must be "found" in this state—that is, it must have subjected itself to the jurisdiction by "doing business" in this state. *Carroll* v. *New York, &c., Railroad Co., 65 N. J. Law 124; St. Clair* v. *Cox, 106 U. S. 350.*

In *Doctor* v. *Desmond, 80 N. J. Eq. 77,* Vice-Chancellor Leaming quashed the service of a subpœna *ad respondendum*

served upon the director of a Pennsylvania corporation attending a stockholders' meeting in this state, of a corporation of this state. He found that the officer represented the foreign corporation at the meeting, and to that extent the corporation was transacting business in this state, but he held, citing numerous authorities, that: "It appears to be well settled that the rule that a corporation by transacting business in a foreign state voluntarily subjects itself to the laws of that state regulating the service of process on foreign corporations has reference to the transaction of some substantial part of its ordinary business by its officers or agents selected for that purpose, and that the transaction of an isolated business act is not carrying on or doing business within the meaning of the rule." *Interstate Amusement Co.* v. *Albert, 259 U. S. 560; Knapp et al.* v. *Bullock Tractor Co., 242 Fed. Rep. 543.* A single or isolated transaction is not doing business. *D. & H. Canal Co.* v. *Mahlenbrock, 63 N. J. Law 281; Von Seyfried* v. *Vollers, 75 N. J. Law 405.* Moreover, by "business" is meant trading, in its broadest sense, commercially, financially, or otherwise, within the scope of corporate capacity. The business of the convention was that of the association, and the participation therein by the defendant corporations cannot by any stretch of fancy be looked upon as doing business in this state so as to render the foreign corporations amenable to our jurisdiction and subject to a decree *in personam.*

Counsel next insists that it was not pointed out to me that the contract sued on was made in this state, and, consequently, it was not argued, that the case comes within an exception to the general rule, viz., that where a foreign corporation, not authorized to do business in this state, engages in a single transaction, it is subject to process, in respect of such transaction, by service upon its officers who, afterwards, come into this state on either corporate or private business. He cites as authority *Moulin* v. *Trenton Life and Fire Insurance Co., 24 N. J. Law 222,* and Mr. Justice Dixon's interpretation of that decision in *National Condensed Milk Co.* v. *Brandenburgh, 40 N. J. Law 111,* that "since the case of *Moulin* v. *Insurance Co., 4 Zab. 222,* and *1 Dutch. 57,* it must be regarded as the settled law of this court that if a corporation makes a contract in a state other than

that in which it was chartered, it thereby submits itself to the jurisdiction of such foreign sovereignty so far as to be liable to suit therein in regard to that contract, when summoned according to the laws of the state." Were it not for the opinion of this excellent judge, it would be my impression that the *Moulin Case* holds that jurisdiction over a foreign corporation doing business within the state continues after the corporation has withdrawn, with respect to contracts made in the state while doing business there, and that the jurisdiction may be enforced by process served according to the law of the state. If there is this exception to the rule, as the supreme court holds there is, it is not applicable here, for nowhere in the record does it appear that the contract was made in this state.

The receiver's bill alleges that the defunct company was incorporated in 1900, with an authorized capital stock of $300,000, divided into three thousand shares of the par value of $100 each; that it commenced business with $1,000 and "that the said corporation, in pursuance of the powers conferred upon it by said articles of incorporation, did thereafter sell and dispose of its capital stock to the following-named defendants residing at the places set opposite their respective names the amount of stock of the par value set opposite their names;" then follows the names of the corporators and the amount in money of stock. There is no allegation that the sales were negotiated in this state, and it is not to be implied that they were. Nor is it now contended that they were, except upon the theory that as corporate stock has its *situs* in the state of its origin (*Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 197; 75 N. J. Eq. 555*), and, as it is to be assumed that the stock was issued there, that it is to be presumed that the contract of purchase was made where issued. It is manifest that the defendants did not subscribe for the stock and it is inferable that the sales were made in the home states of the defendant corporations, and this inference is strengthened by the rule that pleadings must be construed most strongly against the pleader. *Stephen, &c., Transportation Co.* v. *Central Railroad Co., 33 N. J. Law 229.*

Counsel also insists that the service should have been permitted

to stand, if not as process, as notice to the non-resident defendants of the proposed assessment, as he says was done by Vice-Chancellor Stevens in *Puster* v. *Parker Mercantile Co.*, 64 N. J. Eq. 599. That was not a case for an assessment upon corporate stock, and the practice there pursued was disapproved in *Wilson* v. *American Palace Car Co.*, 64 N. J. Eq. 534. The course now indicated might have been adopted with propriety had it been suggested, but the complainant would have had no cause for complaint had it been refused, as the defendant corporations had already been served with notice as directed by the order of publication.